# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMMIE SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 01044 |
| v. | ) | |
| | ) | |
| VILLAGE OF GLENDALE HEIGHTS, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jammie Sheppard alleges that her employer, the Village of Glendale Heights, discriminated against her on the basis of her race (African American) and sex (female) and subjected her to retaliation in violation of Title VII of the Civil Rights Act of 1964. Previously, while this case was before another judge, claims for racial and sexual harassment were dismissed, as was a *Monell* claim against the Village. Before the Court now is the Village's motion for summary judgment on the remaining counts, which the Court grants in its entirety.

**I.      Background[1]**

In 2007, Sheppard applied to be a police officer with the Village of Glendale Heights. Pl.'s Resp. Def.'s 56.1 Stmt. ¶ 1. She proceeded to sit for a hiring examination, a psychological exam, and was interviewed with the Village's Board of Police and Fire Commissioners. *Id.* ¶¶ 2–4. In June 2008, Sheppard learned that she would be hired; she then enrolled in the Suburban

---

[1] The following facts are drawn from the admissions in the Plaintiff's Response to the Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts ("Pl.'s Resp. Def.'s 56.1 Stmt."), Dkt. 77, and the properly supported assertions in the Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Pl.'s 56.1 Stmt."), Dkt. 92. As it must on a motion for summary judgment, the Court construes the evidence in favor of the plaintiff, who is the nonmoving party. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013).

1

Law Enforcement Academy at the College of DuPage. After graduating from the Academy on September 24, 2008, she reported for work and began field training. *Id.* ¶¶ 6–7. After completing field training in April or May 2009, Sheppard began working on her own. She was assigned to the midnight shift under the immediate supervision of Sergeants Baley and Skopek. Her duties included traffic enforcement, crime prevention, answering calls, and patrolling local businesses. *Id.* ¶¶ 11–13.

At some point during her employment with the Village, Sheppard claims, Sergeant Kenneth Graff made "certain harassing and discriminatory comments" to her, including saying that she sounded too "urban" when speaking on the radio and making a comment about her nipple. Pl.'s 56.1 Stmt. ¶¶ 7, 11. Sheppard does not identify when and where Graff made these comments, and the Village denies that he made them at all, but Sheppard says that she complained about Graff's comments orally to several people, including Sergeant Graff himself, her training officer Rhonda Kirsten, Commander Schar's administrative assistant Tanya Macko, and Sergeant Tony Mineo. *Id.*

Sheppard's performance working on her own was not flawless. As 2009 progressed, she made mistakes and violated department policies on multiple occasions. She was reprimanded for failing to fill out her time sheets. After Sheppard arrested someone for drunk driving on August 19, 2009, she failed to appear for the hearing on September 17, 2009; this violation of the department's rules led to the arrestee's petition to rescind the summary suspension being granted and a letter of reprimand for Sheppard. Pl.'s Resp. Def.'s 56.1 Stmt. ¶¶ 16–19. On August 26, 2009, Sheppard broadcasted the wrong location for a traffic stop and directed backup units to an incorrect location. *Id.* ¶ 20. On August 30, Sheppard was assigned to a missing juvenile call and incorrectly recorded the last name of the missing child in the missing persons report as

"Stevenson" instead of "Stevens," which prevented the child's name from being entered into the LEADS system. *Id.* ¶¶ 21–24. Sheppard's supervisor logged the incident. *Id.* ¶ 66. On September 4, Sheppard was assigned to handle a complaint that involved a male subject approaching a female from behind, placing his hands over her mouth, and telling her to hang up her phone. Although the complaint involved a battery, Sheppard coded the call as "Other Public Complaint" and left it coded as a closed report that required no further follow-up. Sheppard received a verbal reprimand for the incident, *id.* ¶ 28, based on her failure to recognize the magnitude of the incident, to investigate it adequately, and to notify her supervisor, *id.* ¶¶ 25–27. Also on September 4, Sheppard was eight minutes late to roll call; she was found sleeping in her personal vehicle in the Village's parking lot. She explained to Sergeant Pinscsak that she had fallen asleep in her car after arriving to work early and failing to hear her alarm. *Id.* ¶¶ 28–30.

Two days later, on September 6, Sergeant Skopek observed Sheppard's patrol vehicle parked in a parking lot in Glendale Heights. The vehicle was running with its headlights on. Skopek left the parking lot and returned thirty-eight minutes later to see her vehicle in the same location, still running with its headlights on. Skopek pulled up alongside her vehicle and observed Sheppard sleeping in the vehicle. Sheppard admitted that she was sleeping on duty and received a one-day suspension. *Id.* ¶¶ 31–36. On September 11, while discussing the sleeping incident with Sergeant Baley, Sheppard told Baley that she had not been sleeping and that Skopek was "telling a story." *Id.* ¶ 39. On September 17, as noted above, Sheppard missed a court hearing. On October 15, Commander Dennis Schar advised Sheppard in writing that a formal investigation into her statement to Baley had been instituted under the Uniform Peace Officer's Disciplinary Act, 50 Ill. Comp. Stat. 725/1 *et seq*. The object of the investigation was to determine whether Sheppard had been less than truthful or insubordinate. Commander Schar

completed the investigation and concluded that sufficient evidence existed to both prove that Sheppard had told Baley that Skopek was not being truthful and that in doing so, she had made an untruthful statement regarding Skopek, her supervisor. *Id.* ¶¶ 41–44. Chief Marron, after reviewing Schar's investigation, concluded that Sheppard's conduct warranted a three-day suspension. *Id.* ¶ 45. On November 11, Marron advised Sheppard in a pre-disciplinary conference that she would receive a three-day suspension to be served November 15, 16, and 17. Marron also informed Sheppard that he would be meeting with the Glendale Heights Board of Police Commissioners regarding her overall performance and probationary status; he stated that he would recommend that she be terminated unsatisfactorily and be separated from the department. Marron placed Sheppard on administrative leave until the commission ruled on his recommendation. *Id.* ¶¶ 46–49. Sheppard's final evaluation score was a 2.6 out of 4, which falls in the "needs improvement" range. *Id.* ¶ 65. On November 18, Marron met with the Board of Police Commissioners and recommended that Sheppard's probation be terminated unsatisfactorily. The Board accepted Marron's recommendation and Sheppard was terminated on December 9, 2009. *Id.* ¶¶ 52–53.

On November 12, the day after Sheppard learned that Marron intended to recommend her termination, she lodged a written complaint alleging that she suffered a hostile work environment.[2] Marron and the Village received the complaint on November 13. *Id.* ¶¶ 54–56. Sheppard does not complain that she was discriminated against by every person she encountered in her job at every step of the way.[3] But, she claims that at some point in time, Sergeant Sherry

---

[2] Sheppard admits that she did not inform Chief Marron of these complaints during their pre-disciplinary meeting in connection with the September 6 sleeping incident or during their pre-disciplinary meeting on November 11. Pl.'s Resp. Def.'s 56.1 Stmt. ¶¶ 37–38, 50.

[3] For instance, Sheppard admits that she believes that she was treated fairly during her initial interview with the Village's Board of Police and Fire Commissioners. Pl.'s Resp. Def.'s

Baley told her that she was being held to a higher standard at work because she was a black woman and people were "not used to that" at the Village's police department. Pl.'s 56.1 Stmt. ¶ 3. In her deposition testimony and her answers to interrogatories, Sheppard also cites several fellow employees outside the protected class whom she says were not punished like she was for infractions similar to those she committed during her probationary period: Officer Padyasek (not punished after sleeping on the job), Officer Cahill (not disciplined after arriving five minutes late to roll call), two unnamed male employees (not written up for failing to fill out their weekly timecard), and Officers Wojcik and Parsons (whose probationary periods were extended in light of unspecified "mistakes" they had made, in contrast to Sheppard's termination). *See id.* ¶¶ 4–7.

On December 17, 2009, Sheppard filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting that the Village was discriminating against her on the basis of her sex and race, and retaliating against her for engaging in protected activity under Title VII. On November 15, 2010, Sheppard received the EEOC's dismissal of her charge and a notice of her rights. She then filed her original complaint against the Village in this case on February 14, 2011, and filed the First Amended Complaint on July 1, 2011, alleging sex discrimination (Count I), sexual harassment (Count II), race discrimination (Count III), racial harassment (Count IV), and retaliation (Count V) under Title VII of the Civil Rights Act of 1964, and a *Monell* claim under 42 U.S.C. § 1983 (Count VI). Am. Compl., Dkt. 19. On December 5, 2011, Judge Holderman dismissed Counts II and IV with prejudice and Count VI without prejudice. The Village has since moved for summary judgment in its favor on the remaining counts.

---

56.1 Stmt. ¶ 5. She also admits that her field training officer, Rhonda Kirsten, never said or did anything discriminatory, offensive, or harassing. *Id.* ¶ 10. She finally admits that Chief Michael Marron, Commander Schar, Deputy Chief Bialas, and Human Resources Director Raquel Becerra did not say anything to her to suggest that they discriminated against her on the basis of her race. *Id.* ¶ 14.

5

## II. Discussion

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to determine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A court must grant a motion for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Everett v. Cook Cnty.*, 655 F.3d 723, 726 (7th Cir. 2011) (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005)).

In evaluating a motion for summary judgment, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (quoting *Goetzke v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir. 2002)). Even so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252). For each of the claims remaining in this case, Sheppard fails to identify sufficient evidence and thus fails to avoid summary judgment in the Village's favor.

### A. Race and Sex Discrimination Claims (Counts I and III)

Sheppard claims that she was discriminated against on the basis of her race and sex when she was held to a higher standard than other police officers during her probationary period and terminated from her position with the police department. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may use either the direct method or indirect method of proof under the *McDonnell Douglas* framework to avoid summary judgment on a race or sex discrimination claim. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *see also Atanus v. Perry*, 520 F.3d 662, 671–72 (7th Cir. 2008) (discussing the direct and indirect methods of proof). Sheppard does not identify under which method she proceeds on her race and sex discrimination claims, so the Court considers her claims under both methods.

Under the direct method of proof, a plaintiff may introduce evidence that "points directly" to a discriminatory reason for adverse employment action. *Atanus*, 520 F.3d at 671–72. This showing can be made via "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)). Examples of circumstantial evidence that might bear an inference of intentional discrimination are suspicious timing, ambiguous statements, comments directed at employees in the protected group, and examples of similarly situated employees outside the protected class who received better treatment. *See Atanus*, 520 F.3d at 672 (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)).

Lacking any admissions by the defendant, Sheppard relies on two types of circumstantial evidence to support her claim. She presents evidence that four similarly situated people outside the protected class received more favorable treatment than she did, in the form of less stringent discipline. This evidence takes the form of (1) Sheppard's own answers to interrogatories and (2) Sheppard's deposition testimony. *See* Pl.'s 56.1 Stmt. ¶¶ 4–7 (citing Pl.'s Answer to Interrogs. & Pl.'s Dep. Tr.). She also claims, in an answer to an interrogatory, that Sergeant Baley told her that she was being held to a higher standard because people were "not used to" a black woman working at the department. *Id.* ¶ 3 (citing Pl.'s Answer to Interrogs. No. 12). The proffered evidence is insufficient to allow a jury to find in Sheppard's favor under the direct method.

In deciding whether someone is "similarly situated," courts conduct a "flexible, common-sense examination of all relevant factors." *Donahoe*, 667 F.3d at 846 (quotation marks and citation omitted). The purpose of the similarly-situated analysis "is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Id.* (quotation marks and citation omitted). To be similarly situated, an employee must be "directly comparable to the plaintiff in all material respects." *Id.* (quotation marks and citation omitted). While the question of whether comparators are similarly situated is often one for the fact-finder, a jury needs "enough common factors" to conduct a "meaningful comparison" if it is to determine that discriminatory animus contributed to the employer's actions. *Id.* at 846–47. A court's inquiry on this point should not be mechanical, but typical cases require a plaintiff to show "that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

(quotation marks and citation omitted). Finally, "employees receiving more lenient disciplinary treatment must at least share 'a comparable set of failings.'" *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003)).

Sheppard names four male employees who are not African American as similarly situated comparators, however the evidence that she provides to support her contentions is limited to her own conclusory assertions; she does not offer evidence to support the assertion that she observed enough of these matters herself so as to have the requisite personal knowledge to testify competently.[4] Such unsupported claims are insufficient support for a Title VII claim that relies on such comparators. *See Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) (finding that a plaintiff's "uncorroborated, conclusory statements that similarly situated co-workers were treated differently," without specific evidence, were insufficient to support a Title VII claim). Sheppard offers no evidence regarding the experience level, responsibilities, or disciplinary history of Officer Padyasek, Officer Cahill, or the two unnamed male employees who were not reprimanded for failing to fill out their time cards. Without at least some of these

---

[4] A party's own affidavit, of course, can suffice to create a genuine issue of fact. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). The problem here is not that Ms. Sheppard relies on her own testimony; it is that she is not competent to testify about the circumstances of the purported comparators because she does not have personal knowledge of those circumstances. *See, e.g.*, *Pauley*, 337 F.3d at 772; *Sklyarsky v. ABM Janitorial Servs., Midwest*, 2012 WL 174647, at *3 (N.D. Ill. Jan. 18, 2012) ("The only statements of plaintiff that are presently being considered as affirmative evidence are his deposition testimony and his affidavit that is provided as Exhibit 1 to his response. Even that evidence is limited to statements of fact based on plaintiff's personal knowledge, not his stated beliefs about events that occurred outside his presence."); Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Accordingly, in the absence of admissible evidence corroborating her claims, those claims are inadequate to sustain a jury verdict in her favor.

details, Sheppard has not established enough common factors to enable a jury to conduct a meaningful comparison when determining whether discriminatory animus contributed to the Village's actions. To be sure, the similarly situated analysis is not rigid or mechanical, *see Donahoe*, 667 F.3d at 847–52, but Sheppard must do more than provide unsupported generalities to survive this motion, *see Oest*, 240 F.3d at 615.

Sheppard similarly fails to offer admissible evidence of the conduct or failings of Officers Wojcik and Parsons during their probationary periods. Sheppard argues that despite these officers' "mistakes" in performance, their probationary periods were extended while she was terminated. Pl.'s 56.1 Stmt. ¶ 7. Her problem here is that she has not elaborated on what these mistakes were. She has not established that these officers' mistakes were at all similar to those that she admits having made. Sheppard does not dispute that she failed to appear at a hearing in violation of department policies, broadcasted the wrong location of a traffic stop when requesting backup, incorrectly recorded the name of a missing youth, arrived late to roll call, slept on the job, and was investigated for being less than truthful when talking about a superior officer. *See, e.g.*, Pl.'s Resp. Def.'s 56.1 Stmt. ¶¶ 17–20, 22, 24, 26, 28, 36, 43–44. Sheppard's spare deposition testimony that these other officers made "mistakes just as [she] did" is insufficient to establish enough common factors allow a jury to find these individuals similar enough to Sheppard to eliminate other explanatory variables for any difference in treatment. *See* Pl.'s Aff. 202, Dkt. 92-2. Without evidence that Wojcik and Parsons experienced problems as frequently or as severe during their probationary periods, Sheppard has not established that they shared a "comparable set of failings" to meet her burden as to these comparators. *See Harris*, 666 F.3d at 449.

This leaves only Sergeant Baley's statement that Sheppard was held to a different standard, which is insufficient to support a finding for Sheppard. First of all, Sheppard offers no evidentiary basis for introducing Baley's statement. Sheppard neither deposed Baley nor presented an affidavit from Baley in support of her argument. Baley's statement, as produced in Sheppard's answer to an interrogatory, is offered to prove the truth of the matter asserted: that Sheppard was held to a different standard than others. The statement is therefore inadmissible hearsay. *See Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000). Even if the statement were not hearsay, on its face it reports Baley's opinion about the motives of others, and would be inadmissible for that reason as well. *See* Fed. R. Evid. 701; *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) ("Discrimination law would be unmanageable if disgruntled employees—the friends of the plaintiff and often people in the same legal position as the plaintiff—could defeat summary judgment by affidavits speculating about the defendant's motives."). Sheppard offers little foundation to show that Baley is chargeable as a decisionmaker responsible for her termination or discipline, so even if this stray comment represented *Baley*'s opinion, it would be irrelevant to directly prove that the Village's actions were motivated by discriminatory animus. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004); *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 788 (7th Cir. 2004).

Under the indirect method of proof, a plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated individuals outside of the protected class more favorably. *Donahoe*, 667 F.3d at 845 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). If the plaintiff establishes all four elements, a rebuttable inference of

discrimination arises, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, the burden shifts back to the plaintiff to prove that the proffered reason is pretext, allowing an inference of discrimination. *Id.*

The parties do not dispute that Sheppard is a member of a protected class. Likewise, the parties agree that the termination of her probation qualifies as an adverse employment action. Sheppard fails on the other two elements of her prima facie case, however. First, Sheppard's response to the Village's motion does not even acknowledge the requirement that she establish that she was meeting the Village's legitimate expectations at the time of the challenged adverse employment action, much less identify what evidence would support her on this element. When considering whether an employee is meeting an employer's legitimate expectations, courts look to whether the employee "was performing adequately at the time of the adverse employment action." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (citing *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993)). In light of Sheppard's failure to argue that she was performing adequately and her admission that she committed multiple infractions and received a laundry list of disciplinary citations during her probationary period—including an oral reprimand, a verbal reprimand, two suspensions, and an investigation for insubordination—she fails to establish that she was meeting those expectations. *See Williams v. Airborne Exp., Inc.*, 521 F.3d 765, 768 (7th Cir. 2008) (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007)) (holding that plaintiff with record of repeated disciplinary action and insubordination did not show that he was meeting his employer's legitimate job expectations). And while that is enough for her claim to fail under the indirect method of proof, it bears noting that Sheppard also

fails to offer sufficient evidence that similarly situated employees outside the protected class received more favorable treatment, as noted already regarding her claim under the direct method.

Having failed to offer sufficient evidence on which a reasonable jury could find in her favor on her discrimination claims under either the direct or indirect evidentiary standard, Sheppard cannot succeed on those claims and the Village is entitled to summary judgment on Counts I and III.

### B. Retaliation Claim (Count V)

Sheppard also claims that she was retaliated against for engaging in the protected activity of making complaints regarding the alleged harassment she experienced at work. Title VII makes it unlawful for an employer to discriminate against an employee because she has complained about prohibited discrimination. *See* 42 U.S.C. § 2000e–3(a). "Retaliation claims may also proceed under direct and indirect methods of proof; rather than proving that she was a member of a protected class, the plaintiff must prove that she engaged in a statutorily protected activity." *Andrews v. CBOCS W., Inc.*, No. 12-3399, 2014 WL 575893, at *3 (7th Cir. Feb. 14, 2014) (citing *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 784–85 (7th Cir. 2007)).

The indirect method involves burden shifting that "mirrors that for discrimination." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 983 (7th Cir. 2014) (quoting *Davis v. ConWay Transp. Cent. Express, Inc.*, 368 F.3d 776, 788 (7th Cir. 2004)). Specifically, a plaintiff must show that she (1) engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* (citation omitted); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). As an initial matter, as with her retaliation claims, Sheppard does not offer proof (or even argue) that she was

meeting legitimate expectations at the time of the action or actions that she challenges. Nor does she offer sufficient evidence for a reasonable jury to find that similarly situated people who did not engage in protected activity were more favorably treated, as she rests on the similarly situated arguments that she asserts in support of her discrimination claims, rejected above.

Sheppard is left, then, with the direct method of proof. The direct method "requires proof that (1) the employee engaged in a statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) a causal link exists between the two." *Majors*, 714 F.3d at 537. Title VII retaliation claims must be proved according to the principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred absent the alleged wrongful actions of the employer. *See Chaib v. Indiana*, No. 13-1680, 2014 WL 685274, at *9 (7th Cir. Feb. 24, 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)). Sheppard asserts that the department retaliated against her by meting out harsher discipline during her probationary period.[5] Pl.'s Resp. 5, Dkt. 90. Assuming without deciding that Sheppard's prior complaints constitute protected activity under Title VII (an assumption that the Village contests), the paucity of detail in her evidence of those complaints undermines her ability to prove a causal link between the complaints and the alleged retaliation. She does not identify *when* she complained, thus failing to prove even that her complaints *preceded* the discipline that she challenges. Sheppard does not dispute having committed the infractions for which she was disciplined, and there is nothing in her disciplinary record that suggests that the

---

[5] The Village, focusing on Chief Marron's decision to recommend Sheppard's termination, argues that Sheppard fails to establish that her employer knew of her protected activity. *See Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009); *Tomanovich*, 457 F.3d at 668–69. As the Village points out, evidence shows that Sheppard's written complaint was made and received by Chief Marron *after* he informed her of his intent to recommend her termination. And though this Court must credit Sheppard's claim that she previously lodged oral complaints about Sergeant Graff's comments, she offers no evidence that Marron knew about these complaints, effectively conceding that it is not her termination that she challenges as retaliatory.

discipline she received was related to the complaints and not solely her admitted performance failings. *See Chaib*, 2014 WL 685274, at *9. The other circumstantial evidence that Sheppard identifies, the hearsay comment by Sergeant Baley that Sheppard was being held to a higher standard, does not relate to Sheppard's complaints about Graff at all and therefore would not be relevant to show the existence of a retaliatory motivation for her discipline even if it were not hearsay. Finally, at least some of the disciplinary actions against Sheppard, such as the mere reprimands that followed her undisputed rule violations, are insufficient, even under the "more generous standard that governs retaliation claims," to constitute adverse employment actions. *See Chaib*, 2014 WL 685274, at *10 (citations omitted) (noting that a "reprimand is insufficient to serve as an adverse employment action"); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003). Having failed to offer evidence that would support causation, it is unnecessary to decide whether her oral complaints were protected activity. The Village is entitled to summary judgment on Count V.

\* \* \*

For the reasons stated above, the Court concludes that Sheppard has failed to offer sufficient evidence to survive summary judgment on her claims for race discrimination, sex discrimination, and retaliation. The Village's motion for summary judgment [75] is therefore granted in its entirety, and judgment will be entered for the Village.

_[signature]_

John J. Tharp, Jr.
United States District Judge

Date: March 25, 2014